**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE JACK RUSSELL TERRIER
NETWORK OF NORTHERN
CALIFORNIA, a California non-profit
corporation; CLAUDIA SPRAGUE;
GEORGIA FISHER,
          *Plaintiffs-Appellants,*

          v.

AMERICAN KENNEL CLUB, INC., a
New York not-for-profit
corporation; THE JACK RUSSELL
TERRIER CLUB OF AMERICA, a
Kentucky non-profit corporation,
          *Defendants-Appellees.*

No. 02-17264

D.C. No.
CV-98-20932-JW

THE JACK RUSSELL TERRIER
NETWORK OF NORTHERN
CALIFORNIA, a California non-profit
corporation; CLAUDIA SPRAGUE;
GEORGIA FISHER,
          *Plaintiffs-Appellees,*

                    v.                         No. 03-15345

AMERICAN KENNEL CLUB, INC., a                   D.C. No.
New York not-for-profit                    CV-98-20932-JW
corporation,
                     *Defendant,*               OPINION

                   and

THE JACK RUSSELL TERRIER
CLUB OF AMERICA, a Kentucky
non-profit corporation,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
December 8, 2004—San Francisco, California

Filed May 17, 2005

Before: Dorothy W. Nelson, Andrew J. Kleinfeld, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Malcolm A. Misuraca, Law Offices of Malcolm A. Misuraca, Newport Beach, California, Victoria E. Brieant, Stroock & Stroock & Lavan LLP, Miami, Florida, for the plaintiffs-appellants.

Eric R. Haas, Charles A. Brown, Burnham Brown LLP, Oakland, California, for the defendants-appellees.

**OPINION**

GOULD, Circuit Judge:

We must decide whether a complaint alleging a national dog club's policy banning members that register their dogs with an alternative club raises cognizable claims of group boycott pursuant to the Sherman Act. We must also decide whether Appellants' claim of false advertising pursuant to the Lanham Act was properly dismissed for lack of standing after trial.

The Jack Russell Terrier Network of Northern California ("JRTNNC") and individual Jack Russell Terrier owners and breeders Claudia Sprague and Georgia Fisher (collectively "Appellants") appeal the district court's judgment, following a dismissal of antitrust claims on motion, and a dismissal of false advertising claims after bench trial, in favor of the Jack Russell Terrier Club of America ("JRTCA"). The JRTNNC, a former regional affiliate of the JRTCA, seeks declaratory and injunctive relief regarding a JRTCA policy known as the "Conflicting Organization Rule" ("COR"), which provides that JRTCA affiliates and members will recognize only the JRTCA registry of Jack Russell Terriers, and will not register their dogs with conflicting organizations such as the American Kennel Club ("AKC"). The Appellants argue that the COR and its enforcement mechanisms constituted a "group boycott" and "false advertising" in violation of the Sherman and Lanham Acts, and unlawfully subjected the JRTNNC to liability from those injured by the policy.

The district court granted the JRTCA's motion to dismiss the Appellants' Sherman Act claims. After a bench trial, the district court held that the Appellants lacked standing to raise a claim under the Lanham Act. The Appellants appealed the dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and the trial ruling. The JRTCA cross-appealed the district court's decision to deny the JRTCA any of its costs.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I**

This case arises from a philosophical disagreement between groups of well-intentioned people dedicated to a breed of dog, the Jack Russell Terrier. A preliminary historical note is illuminating: Jack Russell Terriers were first bred in the south of England in the mid-1800's to hunt European red fox, both over and underground, for the sport of kings. The breed got its name from a renowned Nineteenth Century British huntsman and breeder, Parson John Russell, known as "The Sporting Parson," whose passion for fox hunting and working terriers was legendary. Russell developed and bred the particular strain of white-bodied "fox" terriers now known as Jack Russell Terriers to emphasize their working and hunting abilities.[1]

The JRTCA is a national breed club and dog registry with standards aimed at preserving the working-dog characteristics and heritage of the Jack Russell Terrier.[2] Formed in 1976, the JRTCA is the largest organization and registry of Jack Russell Terriers in the world, and derives a substantial amount of income from interstate and foreign commerce in the Jack Russell Terrier.[3] As its membership expanded, regional affiliates of the JRTCA formed, and were required to comply with the

---

[1] For more, *see generally* D. Caroline Coile, *The Jack Russell Terrier Handbook* 1-14 (2000).

[2] JRTCA Constitution, Art. I, § 2(g), *at* www.terrier.com/jrtca/ constitution.php3 (last visited Apr. 25, 2005). For more on the JRTCA, see the JRTCA website at www.terrier.com.

[3] With regard to the Sherman Act claims that were dismissed pursuant to Rule 12(b)(6) for failure to state a claim, we take the facts as alleged in the Appellants' third amended complaint as true. With regard to the facts as pertinent to the Lanham Act claim of false advertising, the facts are as determined by the district court's findings of fact after bench trial. In general, these facts are the same.

JRTCA's constitution as terms of membership. The JRTCA promotes, runs, and sanctions national dog trials for the Jack Russell Terrier. The club affiliates host regional Jack Russell Terrier shows and trials for which the JRTCA provides certified judges. The winners of the regional shows are eligible for the annual national JRTCA Jack Russell Terrier show. Jack Russell Terrier owners and breeders attend these JRTCA events to have their dogs compete in trial events and be judged in shows to the breed standard; to advertise, buy, and sell terriers; and to win awards. Awards are marks of excellence for dog breeders that they use to differentiate and promote their kennels in future commerce. Only JRTCA members are allowed to participate in JRTCA events.

Until recently, the Jack Russell Terrier was not a breed recognized by the AKC, the well-known umbrella registry for almost all types of pure-bred dogs in the United States. Consequently, unlike other breeds recognized by the AKC, there was no AKC registry of Jack Russell Terrier breeders or an AKC-breed certification by which potential owners could verify the authenticity of prospective dogs. Aiming to remedy this omission, in 1991 a minority group of JRTCA members asked the AKC to recognize the Jack Russell Terrier as an official breed. They formed a "foundation stock" of dogs to stand as a base for a AKC dog registry and to be used to trace the pedigree of offspring. The AKC accepted the Jack Russell as an official AKC-certified breed in 1998.[4]

The JRTCA opposed the AKC listing of Jack Russell Terriers, believing that an alternative all-breed kennel club standard and registry was not in the best interests of the dog. The JRTCA emphasizes the working-dog characteristics of the breed, and believes that any kennel club standard would over time change the dog into a show breed, bred for form not func-

---

[4]Effective April 1, 2003, the official name of the AKC breed of Jack Russell Terrier was changed to the "Parson Russell Terrier."

tion.[5] The JRTCA undertook a campaign to discourage its members and the public from participating with the AKC, which included the adoption of the COR.[6] As part of its policy,[7] JRTCA members who registered their dogs with the AKC had

---

[5]AKC standards focus on creating a more uniform dog in size and color, with less emphasis on a dog's "working" traits. AKC dogs are certified by litter at birth by the pedigree of their parents. In contrast, the JRTCA requires the terrier to have reached one year of age, have a traceable pedigree going back at least four generations, and veterinarian's certificate attesting that the dog has no inherited defects. A physical difference between the AKC's breed standard and the JRTCA's breed standard is found in two inches of height: a JRTCA Jack Russell Terrier must measure between ten and fifteen inches, while an AKC Parson Russell Terrier must measure between twelve and fifteen inches.

[6]At the end of the JRTCA constitution is the following notice:

**IMPORTANT**

The JRTCA is adamantly opposed to recognition of the Jack Russell Terrier by ANY kennel club. The JRTCA believes that inclusion in any all-breed registry is detrimental to the protection and preservation of the Jack Russell. The JRTCA's unique registry, with its strict inbreeding limitations and health requirements, working certificate, sanctioned judge and field trial programs, and breeder's code of ethics are all designed to preserve the Jack Russell's unique working ability, great intelligence, sound physical structure, and broad standard so necessary to preserve this unspoiled type, or strain, of working terrier known as the Jack Russell.

The JRTCA feels so strongly about the impact of kennel club recognition on the future of the JR that persons participating in any organization or registry in conflict with JRTCA goals and objectives are not accepted for membership in the JRTCA.

The JRTCA, *at* http://www.terrier.com/jrtca/constitution.php3 (last visited Apr. 25, 2005). There is a similar notification on the JRTCA's application for membership.

[7]The COR provided that affiliates and members of the JRTCA will recognize only the JRTCA-terrier registry, will not become members in conflicting organizations, will not register their terriers with conflicting organizations, and will not exhibit their terriers at JRTCA-sanctioned events if they violate the COR.

their JRTCA membership terminated and were not permitted to participate in JRTCA dog shows.

Georgia Fisher and Claudia Sprague, two of the Appellants, are former Jack Russell Terrier breeders who were barred from competing in JRTCA-sanctioned terrier trials after registering their dogs with the AKC. In addition to being denied access to JRTCA dog trials and shows, the JRTCA "blacklisted" members who registered with the AKC by listing them in the JRTCA's bimonthly magazine dedicated to Jack Russell Terriers, *True Grit*.[8] Both Fisher and Sprague were "blacklisted" in *True Grit*. The Appellants allege that after the listing other Jack Russell Terrier owners and breeders would not associate with Fisher, breed with her dogs, or buy her puppies.

Fisher and Sprague then independently consulted an attorney who wrote letters to the JRTNNC threatening legal action if the JRTNNC refused to allow the breeders to participate in future JRTNNC dog shows.[9] The JRTNNC in turn contacted the JRTCA, requesting indemnification from the national organization if Fisher or any other breeder sued the JRTNNC for enforcing the JRTCA's COR, and denying those owners the ability to participate in JRTNNC events. The JRTCA responded that, while it would continue to require the JRTNNC to comply with JRTCA regulations and to enforce them against members who registered dogs with the AKC, the JRTCA would not indemnify the JRTNNC from any possible liability. The JRTNNC concluded that it could not subject itself and its members to potential liability without indemnifi-

---

[8]The so-called "blacklisting" of breeders refers to a listing in *True Grit* with the caption: "The following breeders/owners are previous JRTCA members who to our knowledge have registered their terrier(s) with the AKC."

[9]As discussed above, for breeders, the dog show circuit is a major means by which to differentiate their kennels. A dog that wins show awards and honors increases its value for sale or breeding, as well as the value of its offspring.

cation, and therefore would permit AKC-registered owners to participate in its regional terrier events. The JRTCA then terminated the JRTNNC's charter.

The JRTNNC filed suit in the United States District Court for the District of Northern California, naming the JRTCA and the AKC as defendants, and claiming that the JRTCA's COR was an illegal group boycott of AKC dog owners and breeders in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

The AKC moved to dismiss based on the fact that the JRTNNC had failed to point to any AKC conduct causing the JRTNNC injury. The JRTCA also moved to dismiss. The district court granted both motions and dismissed the action, granting leave for the JRTNNC to amend its complaint as against the JRTCA.

The JRTNNC filed a second amended complaint, adding Sprague and Fisher as co-plaintiffs. The JRTNNC then filed a third amended complaint, adding the Jack Russell Terrier Club of Great Britain as a named co-defendant, as well as two regional JRTCA affiliates, the California South Coast Jack Russell Terrier Club ("SCJRTC") and the Jack Russell Terrier Club of Central California ("JRTCCC").[10] The third amended complaint requested declaratory and injunctive relief, and raised seven claims asserting a "group boycott" in violation of the Sherman Act, a claim of "false description" in violation of the Lanham Act, and two state law claims of unfair competition.

The JRTCA again moved for a Rule 12(b)(6) dismissal. The district court granted the motion as to the JRTNNC's Sherman Act claims, but denied the motion as to the Lanham

[10]The Jack Russell Terrier Club of Great Britain settled with the Appellants before the second motion to dismiss, agreeing to drop their own COR as part of the terms of that settlement.

Act claim and the California state law claims. Regarding the Sherman Act "group boycott" claims, the district court found that the JRTNNC had not alleged that the JRTCA-affiliated local clubs pursued different economic goals than the national JRTCA, and that this lack of multiple actors was fatal to the Plaintiffs' Sherman Act claims under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). The motion to dismiss was denied with regard to the Lanham Act claim and California state law unfair competition claims, and those issues proceeded to trial.

After a seven-day bench trial, the district court concluded that, while the "blacklisting" advertisement in *True Grit* constituted commercial speech which could violate the Lanham Act, the JRTCA's actions did not violate the Lanham Act or the California Business and Professions Code, § 17200 *et seq.*, because its actions were targeted at the AKC, not the Plaintiffs. The court held that the JRTNNC was not a commercial competitor of the JRTCA, and therefore lacked standing to bring a Lanham "false advertising" claim. This timely appeal of both the partial Rule 12(b)(6) dismissal and trial ruling on the merits followed.[11]

The JRTCA also filed a bill of costs for approximately $18,000 subsequent to the district court's ruling. The JRTNNC moved to have the court review those costs. The district court denied the JRTCA's costs in their entirety, and the JRTCA timely cross-appealed that denial.

## II

We first address the district court's dismissal of the Appellants' Sherman Act claims.[12]

---

[11]The district court also ruled against the Appellants on their related state law unfair competition claims. Those claims were not appealed.

[12]We review the dismissal of a Sherman Act § 1 claim pursuant to Rule 12(b)(6) de novo. *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n.*, 884

## A

**[1]** Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Section 1 is intended to prohibit actions that unreasonably restrain competition. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988). The challenged "action" in this case is the COR policy of the JRTCA and its enforcement. At the crux of Appellants' claim is the argument that, by boycotting all AKC-registered or dual AKC/JRTCA-registered dog owners and breeders from JRTCA membership and participation in JRTCA-sanctioned events, the JRTCA and participating JRTCA-regional affiliates unreasonably restrained Jack Russell Terrier commerce that would otherwise stem from those JRTCA-sanctioned events, the "marketplace" of Jack Russell Terrier commerce. Because JRTCA registration is the equivalent of the "industry standard," the Appellants allege that the JRTCA's COR manipulates the market unreasonably by eliminating superior dogs not based on merit but simply because of their dual registration.

**[2]** Under a "rule of reason" analysis of the § 1 claim,[13] the

---

F.2d 504, 507 (9th Cir. 1989). We affirm the district court's dismissal "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Thus, we do not evaluate whether the Appellants have established any facts in comparison to those alleged by the JRTCA, but rather examine whether, if all the facts the Appellants have alleged were true, they could make out their claims.

[13]Activity which is alleged to have been in violation of § 1 may be subject to a per se standard, or alternatively, § 1 liability might be imposed for concerted action which violates the "rule of reason" standard. *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1154 (9th Cir. 2003). "The rule of reason weighs legitimate justifications for a restraint against any anticompetitive effects." *Id.* at 1156. The parties do not dispute the district court's determination that a rule of reason analysis is the proper framework within which to address Appellants' Sherman Act

Appellants must allege facts that could establish three elements: (1) the existence of a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce. *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784, 788 (9th Cir. 1996). Our focus is the first element, which contains a "basic distinction between concerted and independent action," *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984), such that a combination or conspiracy requires the concerted action of more than a single entity. *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1261 (9th Cir. 1983).

**[3]** In *Copperweld*, the Supreme Court held that a corporation and its wholly owned subsidiaries were legally incapable of "conspiring" for the purposes of § 1. 467 U.S. at 771 (explaining that a parent corporation and its subsidiary "have a complete unity of interest . . . . [T]here is no sudden joining of economic resources that had previously served different interests . . . ."). The Court reasoned that the coordinated activity of parties lacking independent sources of economic power and separate interests does not warrant judicial scrutiny. *Id.* at 770-71. For example, the "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy" because they are "not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals." *Id.* at 769. Rather, an action requires scrutiny under § 1 of the Act if it "deprives the marketplace of the independent centers of decision making that competition assumes and demands." *Id.*

---

claims. *Id.* at 1155-56. We agree that the district court properly considered that the rule of reason is to be applied "where the economic impact of the challenged practice is not obvious." *Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 486 (9th Cir. 1988) (quoting *Dimidowich v. Bell Howell*, 803 F.2d 1473, 1480 (9th Cir. 1986).

Lower courts have since applied *Copperweld*'s reasoning (sometimes referred to as the "single-entity" rule) to a broader variety of economic relationships. *See, e.g.*, *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147-48 (9th Cir. 2003) (describing cases). We have held that the single entity rule applies to principal-agent relationships, *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1336 (9th Cir. 1983), as well as to an agreement between a franchiser and franchisee, *Williams v. I.B. Fischer Nevada*, 999 F.2d 445, 447-48 (9th Cir. 1993) (per curiam). *See also Levi Case Co., Inc. v. ATS Prods. Inc.*, 788 F. Supp. 428, 431-32 (N.D. Cal. 1992) (holding that a patent holder was legally incapable of conspiring with the patent licensee). Two of our sister circuits have also held that separate entities with a common economic interest and without divergent interests are incapable of conspiring for § 1 purposes in other contexts. *See, e.g.*, *Bell v. Fur Breeders Agric. Coop.*, 348 F.3d 1224, 1232-35 (10th Cir. 2003) (holding that a mink-ranching cooperative's board members were incapable of conspiring with the member ranches); *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 275-78 (8th Cir. 1988) (holding that the members of an electric-utility cooperative with common economic interests were incapable of conspiring). This sets the stage for our evaluation whether the JRTCA and its regional affiliates could conspire within the meaning of the Sherman Act as alleged in the complaint.

**B**

**[4]** Whether a national breed club and registry and several of its regional affiliates are capable of conspiring as separate entities under § 1 of the Sherman Act is a question of first impression. Although the single-entity inquiry is unique to the facts of each case, *Williams*, 999 F.2d at 447, in our most recent discussion we distilled general principles to guide us: The crucial question is whether the entities alleged to have conspired maintain an "economic unity," and whether the entities were either actual or potential competitors. *Freeman*,

322 F.3d at 1148-49 (summarizing cases and concluding that "where firms are not an economic unit and are at least potential competitors, they are usually not a single entity for antitrust purposes."). Our inquiry is a functional one. *Copperweld*, 467 U.S. at 773 n.21 (stating the "principle that substance, not form, should determine whether a separately incorporated entity is capable of conspiring under § 1"); *United States v. Sealy, Inc.*, 388 U.S. 350, 353 (1967).[14]

**[5]** Assuming all the Appellants' alleged facts to be true, they have not alleged sufficient facts to support a claim that the JRTCA and its affiliates are separate entities pursuing different economic goals, capable of conspiring for Sherman Act purposes. First, regarding the parties' unity of economic interest, the Appellants did not allege in what manner the JRTCA and the JRTCA regional affiliates named as co-defendants had divergent economic interests, or what goals the affiliates pursued other than those of the JRTCA. Although we assume the truth of the facts alleged in the complaint, we cannot assume any facts necessary to the Appellants' claim that they have not alleged. *Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In fact, as the district court concluded, the objectives of the JRTCA and its regional affiliates are "common, not disparate." *See Copperweld*, 467 U.S. at 771. Both the national club and its affiliates have a common goal—the best interests of the Jack Russell Terrier—and both the JRTCA and its regional affiliates hope to protect their identical economic interest—the current and future value of the Jack Russell Terrier breed, as determined by the JRTCA-breed standards. *See*

---

[14]As a preliminary matter, Appellants argue that the "single entity" determination is an affirmative defense that must be plead and proven by the JRTCA and is therefore improperly resolved on a motion to dismiss. To the contrary, as covered above, the existence of more than one entity sufficient to conspire is part of the first element required to allege a § 1 violation. *See, e.g.*, *Amer. Ad. Mgmt. Inc.*, 92 F.3d at 784.

*id.* at 770-71 ("Because [such] coordination . . . does not represent a sudden joining of two independent sources of economic power previously pursuing separate interests, it is not activity that warrants § 1 scrutiny."); *City of Mt. Pleasant*, 838 F.2d at 274-75 ("[T]wo or more legally distinct entities cannot conspire among themselves if they pursue[ ] the common interests of the whole rather than interests separate from those of the [group] itself.") (quoting *Copperweld*, 467 U.S. at 770-71) (alterations in original). Moreover, the JRTCA's affiliates are best understood as extensions of the national club rather than independent economic actors. The JRTCA's affiliation agreement mandates that affiliates, among other requirements, must: be solely affiliated with the JRTCA; adopt the JRTCA constitution and uphold its goals, purposes, and policies; recognize only the JRTCA-terrier registry; and uphold the JRTCA's policy on conflicting organizations. By the terms of the affiliation agreement, then, the affiliates and the JRTCA share a unity of all relevant interests and policies, which are controlled entirely by the JRTCA.

**[6]** Second and relatedly, the Appellants did not allege that the JRTCA and its regional affiliates were actual or even potential competitors, or conspired through the COR to gain some competitive advantage. *See Freeman*, 322 F.3d at 1148-50. Nor can the Appellants do so: The JRTCA is a national dog club and registry, and the regional dog clubs named as co-defendants are groups of JRTCA members who have formed a regional dog club to represent the JRTCA in their region and host JRTCA events. The JRTCA affiliate agreement also includes provisions requiring that affiliates cannot establish competing dog registries, breed standards, or terrier events outside of those sanctioned and judged by the JRTCA. As discussed above, the regional affiliates' sole purposes are to be affiliated with the national club and to promote the JRTCA breed standard and philosophy. In no way do the affiliates compete with the national club.[15]

---

[15]Because this case concerns a national dog club, it does not fit neatly into the mold of most antitrust cases analyzing for-profit corporations,

Appellants erroneously rely on *Los Angeles Memorial Coliseum Commission v. National Football League*, in which we held that the N.F.L. and its teams were not a single entity for Sherman Act purposes. 726 F.2d 1381, 1390 (9th Cir. 1984). *Los Angeles Memorial Coliseum* is distinguishable because, unlike here, the N.F.L. teams at issue in that case were wholly independent business entities that had separate identities from the larger organization and competed against one another for profit. *Id.* at 1389-90.[16]

[7] In sum, nothing in the Appellants' allegations supports the conclusion that the regional JRTCA affiliates acted as independent, self-sufficient agents that could have conspired with the national club. The Appellants have articulated a claim that only involves activity occurring within a single enterprise. As we have said, such a claim falls within the sphere of *Copperweld* preclusion and accordingly is not a viable antitrust claim. We hold that the Appellants did not allege sufficient facts to support a claim that the JRTCA and its

_____

their officers, and/or their subsidiaries. The JRTCA does not own its regional affiliates, nor is there an agreement between them to divide profits and losses. However this lack of a traditional corporate structure is less persuasive in the non-profit context, and the difference alone is insufficient to require reversal. *Copperweld*, 467 U.S. at 773 n. 21 (instructing that the question of whether entities have the capability to conspire is determined by the substance of a relationship, not its form); *Thomsen v. W. Elec. Co., Inc.*, 680 F.2d 1263, 1266 (9th Cir. 1982) ("[T]he mere fact of separate incorporation, without more, is not sufficient to prove the capability for conspiracy.") (internal quotation marks omitted). As explained above, in substance the JRTCA and its affiliates share a unity of policy, identical economic interests in the Jack Russell Terrier breed as defined by JRTCA standards, and were never actual or potential competitors that decided to conspire. We think this relationship sufficiently akin to the Court's reasoning in *Copperweld* to apply the single entity rule under these facts.

[16]*Los Angeles Memorial Coliseum* also predated the Supreme Court's clarifying discussion in *Copperweld*.

affiliates pursued divergent economic goals, and we affirm the district court's Rule 12(b)(6) dismissal.[17]

## III

We next address the Appellants' Lanham Act claim.[18]

[8] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services. *Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981). Appellants argue that the publication of the former JRTCA breeders who had registered with the AKC was a false advertisement that misrepresented the quality of their Jack Russell Terriers by falsely implying that JRTCA-only terriers are superior to all other Jack Russell Terriers and falsely implying that those dogs excluded do not meet JRTCA standards. This ostracizing of breeders who are "blacklisted" may cause economic harm, because, as discussed above, breeders depend on their dogs' reputation of quality and on the trial awards won at JRTCA events to sell and breed their dogs.

Appellants admit that the JRTNNC is not a direct competitor with the JRTCA, but point out that standing of non-competitors has been recognized in other Lanham Act cases,

---

[17]Our precedent requires us to recognize that our holding is limited to the particular circumstances we address. *Williams*, 999 F.2d at 447 ("Whether corporate entities are sufficiently independent requires an examination of the particular facts of each case."). We express no opinion on whether other national clubs and their regional or local affiliates could be considered a "single entity" for Sherman Act purposes in other factual and competitive settings.

[18]After a bench trial, we review the district court's findings of fact for clear error, and we review the court's conclusions of law de novo. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004). We review questions of standing and statutory construction de novo. *Barrus v. Sylvania*, 55 F.3d 468, 469 (9th Cir. 1995).

and Appellants claim the district court erred in requiring that the Appellants be in direct competition with the JRTCA. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1107-10 (9th Cir. 1992); *Smith*, 648 F.2d at 607-08. Alternatively, Appellants argue that breeders Sprague and Fisher, as members of the AKC and targets of the JRTCA "blacklist," have standing to bring their claim.

[9] Appellants' reliance on *Waits* and *Smith* is misplaced. We have said that different causes of action alleged pursuant to the different subsections of 15 U.S.C. § 1125(a) have different standing requirements. *Barrus*, 55 F.3d at 469-70. *Smith* and *Waits* involved the "false association" prong of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), under which a plaintiff need only allege commercial injury based upon the deceptive use of a trademark or its equivalent to satisfy standing requirements. *Id.* That the parties be competitors "in the traditional sense" is not required. *Waits*, 978 F.2d at 1110. On the other hand, for standing pursuant to the "false advertising" prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is "competitive," or harmful to the plaintiff's ability to compete with the defendant. *Barrus*, 55 F.3d at 470 (citing *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987)).

[10] In this case, the Appellants allege false advertising in violation of § 1125(a)(1)(B). The JRTNNC is not a competitor of the JRTCA that has suffered a competitive injury. Nor does the fact that Sprague and Fisher were the target of the *True Grit* advertisement make them competitors with the JRTCA that have suffered competitive injuries.[19] We hold the

---

[19]Appellants contend that the AKC would have had standing as a competitor of the JRTCA, and lament that, while the Appellants tried to join the AKC in this litigation, the AKC chose not to remain. However, the dismissal of the AKC as a party was not appealed and is not before us.

district court did not err in concluding the Appellants lacked standing under the Lanham Act.[20]

## IV

Lastly, we address the JRTCA's cross-appeal of the district court's denial of costs.[21]

[11] Federal Rule of Civil Procedure 54(d)(1)[22] creates a presumption in favor of awarding a prevailing party its costs other than attorneys' fees, but vests in the district court the discretion to refuse to award such costs if the district court gives specific reasons explaining why the case is not ordinary and why it would be "inappropriate or inequitable to award costs." *The Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591, 593 (9th Cir. 2000) (en banc).

---

Appellants also argue that, because the AKC would likely have standing, Appellants should have standing vis à vis terrier owners/breeders Sprague and Fisher, who now have dogs registered with the AKC. That organization's possible standing as a competitor of the JRTCA does not make Sprague and Fisher competitors with the JRTCA. *Barrus*, 55 F.3d at 470 ("[I]n order to satisfy standing the plaintiff must allege commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant.").

[20]The parties also debate whether the COR is protected by the First Amendment. We need not and do not reach this question because the initial issue of standing (or lack thereof) to assert a "false advertising" Lanham Act claim resolves the matter.

[21]We review a district court's denial of costs to a prevailing party for an abuse of discretion. *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002). A district court abuses its discretion only if "it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

[22]Rule 54(d)(1) provides in pertinent part: "(1) Costs Other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ."

**[12]** The district court gave specific reasons why an award of costs was inappropriate, noting both the Appellants' lack of financial resources and the substantial profit of the JRTCA. Those reasons have previously been approved by this court as proper grounds for a denial of costs. *See Ass'n of Mexican-Am. Educators*, 231 F.3d at 592-93. The denial of costs was not an abuse of discretion.

**AFFIRMED.**