**Daniel JURIN, Plaintiff,**

v.

**GOOGLE INC., Defendant.**

No. 2:09–cv–03065–MCE–KJM.

United States District Court,
E.D. California.

March 1, 2010.

---

Paul R. Bartleson, Law Offices of Paul R. Bartleson, Sacramento, CA, for Plaintiff.

Margaret Mary Caruso, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Redwood Shores, CA, for Defendant.

*MEMORANDUM AND ORDER*

MORRISON C. ENGLAND, JR., District Judge.

Through this action Plaintiff Daniel Jurin ("Plaintiff") alleges several violations of state and federal law arising out of the use of the trademarked name "Styrotrim" as a suggested keyword in the "AdWords" program operated by Defendant Google, Inc. ("Defendant"). Presently before the Court is a Motion by Defendant to Dismiss the Second, Fifth, Sixth, Seventh, and Ninth Causes of Action alleged by Plaintiff for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendant also moves for costs and to stay the proceedings. For the reasons set forth below, Defendant's Motions are granted in part and denied in part.[1]

### BACKGROUND[2]

This dispute is based on Plaintiff challenging the lawfulness of Defendant's Keyword Suggestion tool in its for-profit "Google AdWords" program.

1. Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument. Local Rule 230(g).

### A. Background on Search Engines

Defendant is a highly recognized corporation most known for its widely-used search engine website. As part of operating its search engine, Defendant "indexes" websites, collecting information regarding their contents so that it may then store the information for use in formulas which respond to search queries. Generally, when a user enters a query into Defendant's website, the search engine will process relevant sites based on several information factors and then return results to the user.

Web designers routinely use this process to influence their ranking on the results page. Prior to building a site, web designers will often conduct a keyword search using various available keyword tools in order to determine what terms or phrases internet users are most commonly searching for. A web designer will then build his site around more popular search terms in order to ensure a higher rank on a search engine results page.

Those with more capital may also "bid" on keywords. A web designer can use a keyword tool to discover popular terms, construct an ad or site using those key words, and then pay a search engine provider a fee to bid on those terms in an effort to appear on a results page as a "Sponsored Link". The higher a web designer bids, the higher the "Sponsored Link" placement when those bid upon keywords are searched for. "Sponsored links" appear either at the top or along the side of a search engine results page.

As part of its business, Defendant allows advertisers to bid on keywords in a program called "Google AdWords".

2. The factual assertions in this section are based on the allegations in Plaintiff's Complaint unless otherwise specified.

## B. Plaintiff's Suit

Plaintiff owns a company which markets and sells its trademarked "Styrotrim" building material to homeowners, contractors, and those in the construction and remodeling industries. Plaintiff files suit in this case based on Defendant's, and Plaintiff's competitors, alleged unauthorized use of its trademarked name as a generic keyword.

Defendant's AdWords program picked up the trademark name "Styrotrim" as a commonly searched term and thereafter suggested it as a keyword to bidders in its AdWords program. It then allowed Plaintiff's competitors to bid on the keyword "Styrotrim" thus allowing them to appear as a "Sponsored Link" on a results page whenever the term "Styrotrim" was searched for.

Plaintiff now alleges that through its AdWords program, Defendant misappropriated its trademark name for its own use, generated advertising revenue from Plaintiff's competitors, and facilitated Plaintiff's competitors in infringing on Plaintiff's trademark.

Plaintiff alleges that Defendant's actions have caused a dilution of its consumer base. Plaintiff states that as a result of Defendant's program, often times competitors' names may appear in a position higher than Plaintiff's business on a results page. Plaintiff argues this confuses consumers into believing that competitor's product is preferable to Plaintiff's and, in essence, is a form of "bait and switch" advertising purposefully using Plaintiff's trademarked name to misdirect consumers away from Plaintiff's site.

Defendant presently moves to dismiss Plaintiff's allegations of violation of the Lanham Act, Negligent Interference with Contractual Relations and Prospective Economic Advantage, Intentional Interference with Contractual Relations and Prospective Economic Advantage, Fraud, and Unjust Enrichment.

## STANDARD

■ On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* at 1964–65 (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004) ("The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

"Rule 8(a)(2) ... requires a 'showing,' rather than a blanket assertion of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly,* 550 U.S. at 556 n. 3, 127 S.Ct. 1955. A pleading

must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* Nevertheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556, 127 S.Ct. 1955.

■■ A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...." Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir.1992).

### ANALYSIS

**A. Motion to Dismiss**

**1. Lanham Act—Count 2**

**(a) False Designation of Origin**

Plaintiff alleges that Defendant's publishing of "Sponsored Links" in response to an online search for trademark "Stryotrim" constitutes a false designation of origin, affiliation, connection or association of a competitor with Plaintiff. In so doing, Plaintiff alleges Defendant violates the false designation of origin provision of the Lanham Act, 15 U.S.C. § 1125(a).

The Lanham Act creates civil liability for,

"any person who ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designations of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

15 U.S.C. 1125(a).

■■ A violation of this section occurs when a producer misrepresents his own goods or services as someone else's, or, conversely when he represents someone else's goods and services as his own. *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1248 (11th Cir.2007) (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 28 n. 1, 123 S.Ct. 2041, 156 L.Ed.2d 18(2003)). The Supreme court has held that in the context of false designation of origin claims the use of the word "origin" refers to a false or misleading suggestion as to "the producer of the tangible goods that are offered for sale." *Dastar,* 539 U.S. at 37, 123 S.Ct. 2041. Essentially, a false designation claim requires a showing that the defendant falsely represented that it was the "source" of the goods when it was not, thereby suggesting that the defendant was "the producer of the tangible product sold in the marketplace." *Id.* at 31, 123 S.Ct. 2041; *see also Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1144 (9th Cir.2008).

■ By its terms, the Lanham Act seeks to prevent confusion as to the producer of the goods. Here, Defendant has

in no way directly represented that it is the producer of the Styrotrim product. To the extent Plaintiff may contend that Defendant has helped "facilitate" confusion of the product with others, such is a highly attenuated argument. Even if one accept as true the allegation that a "Sponsored link" might confuse a consumer, it is hardly likely that with several different sponsored links appearing on a page that a consumer might believe each one is the true "producer" or "origin" of the Styrotrim product. As such, Plaintiff fails to properly plead a false designation of origin claim.

### (b) False Advertising

■ Plaintiff also alleges that Defendant's AdWords program constitutes false advertising in violation of the Lanham Act as codified at 15 U.S.C. § 1125(a)(1)(B). Maintenance of a false advertising claim under 15 U.S.C. § 1125(a)(1)(B) requires, "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir.2005) (holding that while under a "false association claim" parties need not be direct competitors, under a "false advertising" claim they do).

■ Here, Plaintiff and Defendant are not direct competitors. Although Defendant may provide advertising support for others in Plaintiff's industry, Defendant nonetheless does not directly sell, produce, or otherwise compete in the building materials market. Without a showing of direct competition, Plaintiff fails to sustain a claim for false advertising under the Lanham Act.

### 2. Communications Decency Act

Defendant alleges that the Communications Decency Act ("CDA") immunizes it from Plaintiff's allegations of Negligent Interference with Contractual Relations and Prospective Economic Advantage, Intentional Interference with Contractual Relations and Prospective Economic Advantage, Fraud, and Unjust Enrichment.

■ The goal of the CDA is to promote the continued development of the Internet and other interactive computer services. 47 U.S.C. § 230(b)(1); *see also Perfect 10 Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir.2007). The CDA provides complete immunity to any "provider or user of an interactive computer service" from liability premised on "information provided by another content provider." 47 U.S.C. §§ 230(c)(1). Under the CDA an interactive computer service qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir.2003). An unprotected service provider is defined as any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service. 47 U.S.C. §§ 230(f)(3). "So long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process." *Carafano*, 339 F.3d at 1124.

Defendant argues that it satisfies the definition of a protected interactive computer service. Plaintiff conversely argues that through its keyword suggestion tool Defendant does in fact participate in the content of the advertisements, rendering them an "information content provider" outside of the protection of the CDA.

■ However Defendant does not provide the content of the "Sponsored Link" advertisements. It provides a space and a service and thereafter charges for its service. By suggesting keywords to competing advertisers Defendant merely helps third parties to refine their content. This is tantamount to the editorial process protected by the CDA. Defendant's keyword suggestion tool hardly amounts to the participation necessary to disqualify it of CDA immunity. Rather it is a "neutral tool," that does nothing more than provide options that advertisers could adopt or reject at their discretion, thus entitling the operator to immunity. *Goddard v. Google, Inc.,* 640 F.Supp.2d 1193, 1197–98 (N.D.Cal.2009)

The purpose of the CDA is to encourage open, robust, and creative use of the internet. *See* 47 U.S.C. § 230(b). Ultimately, Defendant's Adwords program simply allows competitors to post their digital fliers where they might be most readily received in the cyber-marketplace. Accordingly, Defendant meets the definition of a protected interactive computer service and is therefore immunized from liability on Plaintiff's Fifth, Sixth, Seventh, and Ninth Causes of Action.

### B. Motion for Costs and to Stay Proceedings

Defendant concurrently moves for an order requiring Plaintiff to pay costs for an almost identical complaint previously filed by Plaintiff against Defendant in the Central District of California on June 2, 2009 and voluntarily dismissed on July 23, 2009. Defendant also moves for an order to stay the current proceedings until Plaintiff has complied with the order to pay costs. Specifically, Defendant seeks $6,030.52, as the cost of the previous litigation including attorney fees.

■ Rule 41(d) of the Federal Rules of Civil Procedure provides:

Costs of a Previously–Dismissed Action. If a plaintiff who previously [voluntarily] dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

(1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied.

Fed.R.Civ.P. 41(d). Rule 41(d) is an expression of the Court's inherent power to protect defendants from the harassment of repeated lawsuits by the same plaintiff on the same claims. *See Hacopian v. United States Dept. of Labor,* 709 F.2d 1295, 1296 (9th Cir.1983).

■ Comparing the Complaint of the previous action against that of the present action confirms that Plaintiff's current suit does in fact include all of the claims previously brought before the Central District, as well as additional claims. It appears that Plaintiff has simply re-filed an amended version of his earlier suit. Pursuant to Rule 41(d), Plaintiff may not voluntarily dismiss his original suit only to further harass Defendant with renewed allegations of the same claims. Resultantly, the Motion for Costs is granted.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Docket No. 9) Plaintiff's Second, Fifth, Sixth, Seventh and Ninth Causes of Action is GRANTED with leave to amend. Plaintiff may file an amended complaint not later than twenty (20) days after the date this Memorandum and Order is filed electronically. If no amended complaint is filed within said twenty (20)-day period, without further notice, the causes of action addressed by this Order will be dismissed without leave to amend.

Defendant's Motion for Costs (Docket No. 10) is GRANTED. Defendant's Motion to Stay Proceedings (Docket No. 10) is DENIED. Plaintiff is ordered to pay costs for the previous action brought against Defendant not later than twenty (20) days after the date this Memorandum and Order is filed electronically.

IT IS SO ORDERED.