Filed 4/25/16  Fakhrian v. Google, Inc. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BEATRICE FAKHRIAN, | B260705 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC533527) |
| v. | |
| GOOGLE INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debre K. Weintraub, Judge.  Affirmed.

Beatrice Fakhrian, in pro. per., for Plaintiff and Appellant.

Jassy Vick Carolan, Jean-Paul Jassy and Kevin L. Vick for Defendant and Respondent.

_____

## INTRODUCTION

Beatrice Fakhrian sued Google Inc. for defamation based on a negative consumer review of her talent agency business written in 2008 by a third party identified as "Hg." The review was posted on a consumer advocacy website known as the Ripoff Report. Fakhrian claimed that Google distributed the review to millions of people through its search engine, which destroyed her agency. Google demurred to the complaint, arguing that Fakhrian's defamation claim was barred by the one-year statute of limitations and by the Communications Decency Act (CDA), which protects interactive computer service providers from liability based on content posted by third parties. After allowing Fakhrian to amend her complaint twice, the trial court sustained Google's third demurrer without leave to amend. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2008 someone identified as "Hg" from "N Hollywood, California" posted a review of Fakhrian and her business, Mega Artist Talent Agency, on a consumer review and advocacy website known as the Ripoff Report (www.ripoffreport.com). The Internet posting stated, "Mega Artist Talent Agency – New World Management – Beatrice Fakhrian Not a real agency, a Fake management firm, Steals money and lies. criminal. Beverly Hills California."

Fakhrian filed this action on January 17, 2014 alleging a cause of action for defamation "covering 12/29/2008 and everyday thereafter." Fakhrian alleged, "Defendant publishing this false information about me which Is a bunch of lies. Defendant has destroyed agency client list. I have many times Contacted the defendant and told him these were all lies. Plus, I have repeatedly written letters and made dozens of telephone Calls to the defendant regarding these lies spreading around the World about me and my business. Defendant refuses. . . . Many times I have requested that the defendant cease and desist. He has refused." Although she specified Google in the

2

caption of her complaint, her allegations were uncertain regarding the identity of the defendant. Fakhrian also did not specifically allege when she first became aware of the posting, but states on appeal that she "became aware of these lies . . . a year and a half later."

Google demurred to the complaint, arguing the one-year statute of limitations and the CDA barred Fakhrian's defamation claim. The trial court sustained the demurrer with leave to amend.

Fakhrian filed a first amended complaint alleging, "I do not have a claim about (CDA) 1996, This law clearly gives a blanket immunity to Internet Service Providers. My claim is based on the fact that Google Inc is in violation of it's own terms and conditions by posting. This posting has caused me damages, which entitles me to relief, namely declaratory relief, which is the removal of the posting and any other monetary damages created as a result of the violation of their own terms and conditions by the posting." Fakhrian attached a copy of the "Google Terms of Service," shown as "[l]ast modified April 14, 2014," but she did not specify which provisions of the terms of service she was claiming Google violated. Google demurred again, on the same grounds. The trial court sustained the demurrer, giving Fakhrian "one final opportunity to amend."

Fakhrian filed a third amended complaint (apparently never filing a second amended complaint) alleging, "Google states in its policy that it contacts individuals to verify information. I was never contacted by anyone at Google to verify the information posted about me." Fakhrian also described how her agency had been destroyed, her "[p]ersonal saving ha[d] dwindled to zero," "all of [her] personal relationships and investments in the Entertainment Industry ha[d] been destroyed [and] Google ha[d] to share some degree of fault for [its] reckless disregard [of her r]eputation." Google demurred again on the same two grounds.

The trial court sustained Google's demurrer to Fakhrian's third amended complaint, this time without leave to amend. Fakhrian filed a notice of appeal on December 12, 2014. The court entered a judgment of dismissal on January 5, 2015.

3

## DISCUSSION

A.    *Appealability*

An order sustaining a demurrer without leave to amend is not appealable (Code Civ. Proc., § 904.1), and a party may appeal only after entry of a dismissal or judgment after such an order.  (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.) Nevertheless, a "reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."  (Cal. Rules of Court, rule 8.104(d)(2); see *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1571, fn. 4; *In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1261, fn. 4 ["[a]lthough the appeal was taken from the nonappealable order sustaining the demurrer, we treat the notice of appeal as a premature but valid notice of appeal from the subsequently entered judgment"].) We treat Fakhrian's notice of appeal as filed immediately after entry of judgment on January 5, 2015.

B.    *Standard of Review*

On appeal from a judgment dismissing a complaint after the sustaining of a demurrer without leave to amend, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967; see *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370; *Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 370.) "'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend [her] complaint."'"  (*Aubry*, at p. 970; see *Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1436.)  Nevertheless, "'[l]eave to amend should not be granted where amendment would be futile.'"  (*Schermer v. Tatum* (2016) 245 Cal.App.4th 912, ____, 200 Cal.Rptr.3d 144, 153; see *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 374.)

4

C. *Fakhrian's Defamation Claim Is Barred by the One-Year Statute of Limitations*

The statute of limitations for a defamation cause of action is one year. (Code Civ. Proc., § 340, subd. (c); see *Hebrew Academy of San Francisco v. Goldman* (2007) 42 Cal.4th 883, 895.) A cause of action for defamation accrues and the statute of limitations begins to run when the defendant allegedly publishes the purportedly defamatory statement to a party other than the plaintiff. (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1245-1247; *Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1526.) "In California the accrual of causes of action growing out of the publication of defamatory . . . statements is governed by the single-publication rule." (*Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 395.) "Under the single-publication rule, with respect to the statute of limitations, publication generally is said to occur on the 'first general distribution of the publication to the public' [and] [u]nder this rule, the cause of action accrues and the period of limitations commences, *regardless* of when the plaintiff secured a copy or became aware of the publication." (*Shively*, at p. 1245.) In particular, "the single-publication rule applies to statements published on Internet Web sites." (*Traditional Cat Assn., Inc.*, at p. 395; see *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1121, fn. 8 ["[t]he single publication rule applies to Internet publication regardless of how many people actually see it," so that "publication occurs when the allegedly defamatory statement is first made available to the public"]; *Canatella v. Van De Kamp* (9th Cir. 2007) 486 F.3d 1128, 1135 ["a website . . . is the touchstone for the single publication rule analysis because of the very interests the single publication rule is designed to promote"]; *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.* (S.D.Cal. 2007) 2007 WL 935703 at p. 7 [any argument that the single publication rule does not apply to statements made on the Internet "is foreclosed by *Traditional Cat*"].)

5

Fakhrian alleged in her original complaint that the derogatory comments about her business first appeared on the Internet on December 29, 2008, and continued "every day thereafter." Her third amended complaint attached as an exhibit the allegedly defamatory post by Hg on the Ripoff Report website, which was dated December 29, 2008. Because the single-publication rule applies to statements published on Internet websites, and the statements in this case were posted more than one year before Fakhrian filed her complaint on January 17, 2014, her defamation cause of action is barred by the one-year statute of limitations. (See *Traditional Cat Assn., Inc. v. Gilbreath, supra,* 118 Cal.App.4th at p. 395; *Long v. Walt Disney Co.* (2004) 116 Cal.App.4th 868, 872.)

Fakhrian attempts to avoid the statute of limitations bar by asserting, although without citing any authority, that a "special circumstance [applies] to [the statute of limitations] when the defendant cannot be identified," and that in such a situation "[t]he plaintiff can have more time to file a claim." At the time of the initial publication on December 29, 2008, however, Google was known and could be identified. Moreover, Fakhrian concedes that she became aware of the Ripoff Report statement "a year and a half" after Hg posted it in December 2008. Thus, even if her defamation cause of action did not accrue upon the first general distribution of the publication on the Internet (which it did), Fakhrian's concession that she became aware of the comments "a year and a half" later (i.e., in mid-2010) means that the statute of limitations period expired no later than mid-2011, more than two years before she filed this action in January 2014.

D.      *Fakhrian's Defamation Claim Is Barred by Section 230 of the CDA*

The Communications Decency Act (CDA) of 1996, 47 United States Code, section 230(b) (section 230), states: "It is the policy of the United States – (1) to promote the continued development of the Internet and other interactive computer services and other interactive media; [and] (2) to preserve the vibrant and competitive free market that presently exists for the Internet . . . , unfettered by Federal or State regulation." The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content

6

provider" (47 U.S.C. § 230(c)(1)), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section" (47 U.S.C. § 230(e)(3)).

Section 230 bars all state law claims that seek to hold an interactive service provider liable for content posted by another information content provider or for not removing that content. (*Carafano v. Metrosplash.com., Inc.* (9th Cir. 2003) 339 F.3d 1119, 1124.) "The intent of [section 230] is to '"preclude[ ] courts from entertaining claims that would place a computer service provider in a publisher's role."' [Citations.] Through § 230, 'Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio.'" (*Parker v. Google, Inc.* (E.D.Pa. 2006) 422 F.Supp.2d 492, 501; see *Perfect 10, Inc. v. CCBill LLC* (9th Cir. 2007) 488 F.3d 1102, 1118.)

The CDA confers broad immunity on providers of interactive computer services. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 39.) "[Section 230] immunity requires (1) the defendant be a provider or user of an interactive computer service; (2) the cause of action treat the defendant as a publisher or speaker of information; and (3) the information at issue be provided by another information content provider. (47 U.S.C. § 230(c)(1).)" (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 830; see *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 804; *Barnes v. Yahoo!, Inc.* (9th Cir. 2009) 570 F.3d 1096, 1100-1101.) The provisions of the CDA "have been widely and consistently interpreted to confer broad immunity against defamation liability for those who use the Internet to publish information that originated from another source." (*Barrett v. Rosenthal*, *supra*, 40 Cal.4th at p. 39; see *Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 313 ["courts uniformly hold that claims based on a Web site's editorial decisions (publication, or failure to publish, certain third party conduct) are barred by section 230"].)

7

Fakhrian's defamation claim against Google satisfies all three conditions for immunity.  First, Google is a provider of interactive computer services.  Section 230 of the CDA (47 U.S.C., § 230) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  Courts have repeatedly held that Google meets the definition of a protected interactive computer service.  (See *Jurin v. Google, Inc.* (E.D.Cal. 2010) 695 F.Supp.2d 1117, 1123 [Google "meets the definition of a protected interactive computer service and is therefore immunized from liability"]; *Goddard v. Google, Inc.* (N.D.Cal. 2008) 2008 WL 5245490, p. 2, fn. 2 ["a number of courts already have determined that Google is an interactive computer service provider"]; *Parker v. Google, Inc., supra,* 422 F.Supp.2d at p. 501 ["there is no doubt that Google qualifies as an 'interactive computer service'"]; *Novak v. Overture Services, Inc.* (E.D.N.Y. 2004) 309 F.Supp.2d 446, 452 [Google is a "provider or user of an interactive computer service"].)

Second, Fakhrian seeks to treat Google as a speaker or publisher of information. Her defamation claim seeks to hold Google liable for content posted by Hg.  By claiming Google is liable for the damage caused by Hg's statements, Fakhrian seeks to treat Google as the speaker or publisher of those statements.  (See *Delfino v. Agilent Technologies, Inc.*, *supra*, 145 Cal.App.4th at p. 806; *Gentry v. eBay, Inc.*, *supra*, 99 Cal.App.4th at p. 831 ["hold[ing] eBay responsible for content originating from other parties . . . would be treating it as the publisher, viz., the original communicator"].)

Third, the information was provided by another information content provider. Section 230 of the CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."   (47 U.S.C. § 230(f)(3); *Carafano v. Metrosplash.com., Inc.*, *supra*,  339 F.3d at p. 1123, fn. 2.) Fakhrian's defamation claim is based on content posted by Hg, a third party, on the website of another third party, the Ripoff Report, and on the allegations that Google "published lies and harmful information" and "spread lies" about her because, when

8

individuals "Google [her] name," the results include links to Hg's post on the Ripoff Report.[1] Thus, Fakhrian's claim is based on information provided by another "information content provider." Fakhrian did not allege that Google created or developed the information posted on the Internet or that Google had anything to do with preparing the comments by Hg that appeared on the Ripoff Report.

Fakhrian argues in her opening brief that Google was notified of the information posted by Hg on the Ripoff Report, "began distributing a defamatory/libel lies" about her, and failed to remove the posting from its website. Even if Fakhrian had leave to make these allegations in a further amended complaint, however, they would not state a claim. Such "'[n]otice-based liability for interactive computer service providers would provide third parties with a no-cost means to create the basis for future lawsuits. Whenever one was displeased with the speech of another party conducted over an interactive computer service, the offended party could simply "notify" the relevant service provider, claiming the information to be legally defamatory. . . . Because the probable effects of distributor liability on the vigor of Internet speech and on service provider self-regulation are directly contrary to § 230's statutory purposes, we will not assume that Congress intended to leave liability upon notice intact.'" (*Barrett v. Rosenthal*, *supra*, 40 Cal.4th at p. 46, quoting *Zeran v. America Online, Inc.* (4th Cir. 1997) 129 F.3d 327, 333; see *Baldino's Lock & Key Service, Inc. v. Google, Inc.* (E.D.Va. 2015) 88 F.Supp.3d 543, 547 ["[a] publishing website is immune under the CDA even when given notice that it has published false information"].) As the *Zeran* court explained, in another passage cited by the California Supreme Court in *Barrett*: "If computer service providers were subject to distributor liability, they would face potential liability each time they receive notice of a potentially defamatory statement – from any party, concerning any message. Each notification would require a careful yet rapid investigation of the circumstances

---

[1] The court may consider allegations in Fakhrian's original complaint and first amended complaint in connection with Google's demurrer to the third amended complaint. (See *Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1142; *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.)

9

surrounding the posted information, a legal judgment concerning the information's defamatory character, and an on-the-spot editorial decision whether to risk liability by allowing the continued publication of that information.  Although this might be feasible for the traditional print publisher, the sheer number of postings on interactive computer services would create an impossible burden in the Internet context."  (*Zeran*, at p. 333; see *Barrett*, at p. 45.)  In addition, "the burdens involved in evaluating the defamatory character of a great number of protested messages[ ] would provide a natural incentive to simply remove messages upon notification, chilling the freedom of Internet speech." (*Barrett,* at pp. 54-55.)  Thus, the CDA bars any claim by Fakhrian for failure to remove the Internet posting on the Ripoff Report website.[2]

## DISPOSITION

The judgment is affirmed.  Each party is to bear its costs on appeal.


SEGAL, J.

We concur:

PERLUSS, P. J.                                        BLUMENFELD, J.[*]

---

[2]      Fakhrian also argues that Google breached its terms and conditions because "Google's Privacy & Terms of service states that it verif[ies] information."  As Google points out, however, its "Terms of Service echo the principles of the CDA, which . . . immunizes Google from decisions whether to publish, delete, or edit such content." Google's Terms of Service actually state:  "We don't make any commitments about the content within the services . . . .  We provide the services 'as is.'"  (See *Green v. America Online (AOL)* (3d Cir. 2003) 318 F.3d 465, 471 [rejecting argument "that AOL waived its immunity under section 230 by the terms of its membership contract" where the AOL "Member Agreement between the parties tracks the provisions of section 230"]; *Goddard v. Google, Inc.* (N.D.Cal. 2009) 640 F.Supp.2d 1193, 1201 [dismissing breach of contract and negligent undertaking claims under the CDA because such claims "would treat Google as the publisher or speaker of third-party content"].)

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.