Filed 3/13/26  Estate of Dunstan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ESTATE OF JOHN R. DUNSTAN, | D084525 |
| Decedent, | |
| _____ | |
| U.S. SPECIALTY INSURANCE COMPANY, | |
| | (Super. Ct. No. 37-2015-00005991-PR-LA-CTL) |
| Appellant, | |
| v. | |
| GUADALUPE LOPEZ et al., | |
| Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Olga Alvarez, Judge.  Reversed and remanded for further proceedings.

Lanak & Hanna and Mac W. Cabal for Appellant.

Fidelity National Law Group and Josette. D. Johnson for Respondent Sandra L. Garcia, Trustee of the Sandra L. Garcia Living Trust.

U.S. Specialty Insurance Company (U.S. Specialty), a surety that had issued bonds to a private fiduciary administering a decedent's estate, filed a petition under Probate Code section 850[1] against respondents Guadalupe Lopez, Saul Torres and the Sandra L. Garcia Living Trust[2] in order to reclaim property of the decedent that should have been turned over to the estate. It appeals a judgment sustaining a demurrer to its third amended section 850 petition. U.S. Specialty contends the probate court erred in numerous ways, including by erroneously reversing a ruling of another probate court judge who had overruled previous demurrers. It contends its section 850 petition stated a claim for return of assets subject to a 10-year limitations period for enforcement of judgments. U.S. Specialty maintains its petition is not barred by the statute of limitations because the triggering date was the date in 2022 it first learned that not all assets were within the estate. We conclude based on the decree attached as an exhibit to the section 850 petition that U.S. Specialty's assertion that the 10-year statute of limitations applies has merit. Otherwise, we conclude even if any lesser statute of limitations applied, the accrual of U.S. Specialty's claim presents questions of fact that cannot be resolved at the pleading stage. We thus reverse and remand for further proceedings.

---

[1]    Undesignated statutory references are to the Probate Code.

[2]    Respondents Torres and Lopez are self-represented. They have not filed respondent's briefs, but that does not relieve us from adjudicating the merits of this appeal as to them. (See *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233 ["if the respondent fails to file a brief, the judgment [or order] is not automatically reversed"]; *In re Marriage of Everard* (2020) 47 Cal.App.5th 109, 111, fn. 1.) For clarity, we refer at times to Guadalupe Lopez as Lopez, Saul Torres as Saul, and Lopez's father Leon Lopez as Leon. We intend no disrespect. We refer to the Sandra L. Garcia Living Trust as Garcia.

FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal comes to us following a demurrer, we state the facts from U.S. Specialty's operative third amended petition, accepting the properly pleaded material allegations as true, but not conclusions of fact or law. (*Ranger v. Alamitos Bay Yacht Club* (2025) 17 Cal.5th 532, 538; *Turner v. Victoria* (2023) 15 Cal.5th 99, 109.)[3] We consider attachments and other facts from matters that are properly the subject of judicial notice. (*640 Tenth, LP v. Newsom* (2022) 78 Cal.App.5th 840, 849 & fn. 2; *Moore v. Conliffe* (1994) 7 Cal.4th 634, 638.)

The decedent, John Dunstan, died in March 2013 at age 85, having a claim of ownership to numerous pieces of real property and bank/securities accounts. At the time, Dunstan was taking medications, including the narcotic Vicodin, for multiple serious ailments. U.S. Specialty is the surety who bonded a fiduciary, Janice K. Hall, as the estate's administrator.

In 2011, before Dunstan's death, Lopez's father Leon moved into Dunstan's house, took control of his assets and medical care, and isolated him from others. In September 2011, Leon took Dunstan and Lopez to Las Vegas so they could be married. Afterwards, Leon continued to reside with Dunstan but Lopez lived in her separate residence. At some point, Leon prepared a power of attorney purporting to give Leon the power to handle Dunstan's financial affairs after Dunstan's death, and had Dunstan sign it.

---

3      That many of U.S. Specialty's allegations are pleaded "on information and belief" does not render them defective. They are proper if U.S. Specialty does not have actual or presumed knowledge of the facts, and the allegations are otherwise material and factual, not impermissible contentions, deductions, or conclusions. (See *Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 725, fn. 1; *People v. Superior Court* (*J.C. Penney Corp., Inc.*) (2019) 34 Cal.App.5th 376, 415, fn. 25.)

Following Dunstan's death, Leon lived in Dunstan's residence without paying rent, and retained all of Dunstan's personal possessions and records, including but not limited to his automobile, business records, banking records, estate planning documents and tax returns. Neither Lopez nor Leon filed a petition to administer Dunstan's estate, and they objected to Hall's appointment to administer the estate. Lopez and Leon at various times claimed to be the successor trustees of Dunstan's trust, but at the same time claimed to not know the trust instrument's location or its beneficiaries. Guadalupe believed she was the trust's sole beneficiary, even though Leon had produced documents showing that Dunstan had planned on naming multiple trust beneficiaries.

At the time of Dunstan's death, Lopez, her father, and possibly others held title to or possessed Dunstan's assets, and after his death the Lopezes transferred title to some of the properties to others.

Two months after Dunstan's death, Lopez, a licensed real estate agent, executed an interspousal transfer grant deed for property on 3rd Avenue in Murietta (the Murietta property) owned by Dunstan, transferring it to Dunstan as a married man as his sole and separate property. On the same day, Leon executed a deed transferring that same property to Garcia as trustee of the Sandra L. Garcia Living Trust, using the power of attorney Dunstan had signed. Lopez did not know Sandra Garcia before she sold the property to her. The grant deed was recorded in May 2013.

4

In January 2014, H.E. filed a lawsuit (the *H.E.* action) against Lopez and the Dunstan estate, in part alleging Dunstan had gifted her San Diego real property as well as $5 million.[4]

In April 2015, Hall was appointed the administrator of Dunstan's estate, and U.S. Specialty issued its first of three surety bonds. In August 2015, H.E. made a creditors claim on Dunstan's estate.

In November 2016, the probate court considered Hall's petition to establish the estate's claim of ownership to property and for an order directing its transfer to the estate. It ordered Lopez and Leon to deliver all of Dunstan's trust assets to Hall, and to account to Hall for any money or other assets received by them acting as trustees of the Dunstan living trust and to deliver those items to Hall. But neither party accounted or delivered all assets to Hall.

Lopez transferred some of Dunstan's real properties to her sons, Saul and Salvador Torres, and had collected rental income on those properties. Lopez and/or Leon may have taken possession of bank and investment accounts of Dunstan's at JP Morgan Chase and Wells Fargo and Southwest Securities. Leon became a co-owner of multiple bank accounts owned by Dunstan. Lopez, Leon, Saul and/or Salvador Torres received rental income from properties belonging to Dunstan. Lopez and Leon and the other

---

4    As summarized below, when considering the demurrers to U.S. Specialty's third amended petition, the probate court declined to take judicial notice of the various documents submitted by Lopez and Saul. But because we are unconcerned with the probate court's reasoning, we may consider properly judicially noticeable facts. We may take judicial notice of the fact pleadings were filed, but not the truth of any factual assertions within them. (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1396; see also *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1014; *OneTaste Inc. v. Netflix, Inc.* (2025) 116 Cal.App.5th 174, 195.)

respondents refused to deliver any assets belonging to Dunstan or account for them.

In June 2017, Lopez sued Hall, U.S. Specialty and Dunstan's estate's attorney for negligence and breach of a duty to investigate, among other causes of action. She alleged Hall failed to adequate defend her interests in connection with the *H.E.* action. In that pleading, Lopez made a claim on U.S. Specialty's bond. U.S. Specialty prepared a case management statement in connection with that case for a December 2021 hearing. But U.S. Specialty was unaware that the assets transferred to Lopez's sons had not been returned to Dunstan's estate until 2022.

In January 2022, U.S. Specialty filed a section 850 petition to establish the estate's claim to property and for damages against Lopez, Leon, Garcia and Saul and Salvador Torres. It alleged the respondents "have, in bad faith, wrongfully taken, concealed, or disposed of property belonging to [Dunstan] while he was an elder or dependent adult, and from the estate of [Dunstan], or that they have taken, concealed, disposed of property by the use of undue influence in bad faith or through the commission of elder financial abuse, as defined under Welfare and Institutions Code [s]ection 15610.30, and that they should be liable for twice the value of the property pursuant to . . . [s]ection 859."

Lopez, Saul and Salvador Torres demurred to the petition on grounds it did not state facts sufficient to constitute a cause of action. Specifically, they argued U.S. Specialty as a surety lacked standing to bring the petition because it was not liable until after a surcharge order against the principal became final, and it was not an interested party under section 850 because its bond was not yet at risk. They argued the court should deny leave to amend as U.S. Specialty's prior position taken in 2018 on a demurrer to a section

6

17200 petition would thwart any amendment under the sham pleading doctrine. Garcia joined in the demurrer.

The probate court overruled the demurrer. In part, it ruled U.S. Specialty had an interest in the estate property's proper administration in order to protect the bonds it had issued.

Thereafter U.S. Specialty filed an amended section 850 petition more specifically identifying the property at issue. In November 2022, U.S. Specialty was informed through discovery responses and investigation that another of Lopez's sons, Victor Torres, entered into rental agreements and/or collected rent payments from tenants occupying multiple San Diego properties previously owned by Dunstan.

In May 2023, after obtaining leave to do so from the probate court,[5] U.S. Specialty filed a second amended section 850 petition adding Victor

---

[5] Lopez and Saul opposed U.S. Specialty's motion for leave to amend, arguing it could not show good cause because the statute of limitations or doctrine of laches barred the current pleading. The court rejected the arguments, ruling they "fail to address how the addition of Victor [Torres] as a respondent would make [U.S. Specialty's] claims untimely; therefore, their arguments regarding untimeliness are irrelevant to the current motion. [¶] Second, laches requires a showing of prejudice. [Citation.] As noted above, the only party that might be prejudiced by the [second amended petition] is Victor [Torres]. [Lopez] and Saul have not shown how Victor [Torres] would be prejudiced by the [second amended petition], and Victor [Torres] is the proper party to make such a showing. [¶] Finally, [Lopez] and Saul's arguments regarding untimeliness are premised on when [U.S. Specialty] had knowledge that the real property at issue was outside of the estate. However, [U.S. Specialty] is the surety in this case and its claims are based on a potential surcharge if Hall fails to perform her duties as administrator. As such, the requisite knowledge to begin the accrual of the statute of limitations is not only knowledge that the properties are outside the estate, but also knowledge that Hall failed to take proper action to recover those properties to an extent that would result in surcharge. [Lopez] and Saul have not addressed [U.S. Specialty's] knowledge of these issues."

Torres as a respondent. The second amended petition added allegations about Victor Torres's conduct with Dunstan's properties. Thereafter, the probate court denied Lopez's motion to bifurcate her statute of limitations and laches defenses.[6]

Lopez and Saul demurred to the second amended petition on grounds the statute of limitations barred U.S. Specialty's action to reclaim alleged assets of Dunstan's estate based on both undue influence and elder abuse. They argued that U.S. Specialty had a duty to investigate whether there were assets outside the estate, and there were records that would have disclosed assets were missing. In particular, they argued the face of the petition or judicially noticeable facts showed that on August 4, 2017, U.S. Specialty was personally served with a civil complaint by Lopez naming it as a defendant, in which she described, among other things, a creditor's claim and real and personal property assets outside the estate, which would have put U.S. Specialty on inquiry notice that there were assets outside Dunstan's estate, that Hall had breached her duties, and that U.S. Specialty was facing liability to indemnify the estate as the bond issuer. They argued that December 17, 2020, was the last date U.S. Specialty could legally file its section 850 petition, but it did not do so until January 2022. Lopez and Torres asked the court to take judicial notice of numerous documents, including civil complaints and Hall's 2015, 2016, and 2017 inventories and

---

[6] In part, the court ruled that Lopez had not objected to the second amended petition based on those time-based defenses. It also pointed out it had previously ruled against Lopez's attempt to assert those defenses, repeating its reasoning about Lopez's untimeliness arguments made in connection with her opposition to U.S. Specialty's request for leave to amend (see footnote 5, *ante*).

appraisals.[7]

U.S. Specialty opposed the demurrer. It adopted the probate court's prior reasoning, arguing its claims were based on a potential surcharge if Hall failed her administrator duties, and that the requisite knowledge on its part to begin the statute of limitations accrual was not just knowledge that properties were outside the estate, but also knowledge that Hall failed to take proper action to recover those properties to an extent that would result in surcharge. It argued the demurrers improperly referred to facts outside the pleadings, requiring that they be overruled.

Granting Lopez's request for judicial notice "to the extent permitted," i.e., that the truth of matters in court records and official acts were not subject to such notice, the probate court sustained Lopez's demurrer with leave to amend. The court stated that the statutes of limitation for elder abuse and financial elder abuse were both four years (Code Civ. Proc., § 343; Welf. & Inst. Code, § 15645.7). It cited Code of Civil Procedure section 366.1 as to causes of action surviving a decedent. (Code Civ. Proc., § 366.1 ["If a person entitled to bring an action dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced before the expiration of the later of the following times: [¶] (a) Six months after the person's death. [¶] (b) The limitations period that

---

7    Garcia also demurred to the second amended section 850 petition under the principles of quiet title by adverse possession, and on grounds the applicable statute of limitations barred the action. According to Garcia, who argued she was a bona fide purchaser, U.S. Specialty was on constructive notice of her interest in the Murietta property based on the 2013 grant deed, triggering its duty to investigate. She argued U.S. Specialty would not be able to provide allegations to cure the defect, and asked the court to sustain the demurrer without leave to amend. The court did not consider the demurrer because U.S. Specialty filed its third amended petition before the hearing.

would have been applicable if the person had not died."].)  The probate court ruled the second amended petition was "devoid of any allegations of delayed discovery" and observed the parties disagreed about triggering events and when the statute of limitations began to run.  According to the court, the issue was whether the second amended petition stated sufficient facts addressing delayed discovery, and "[w]hen the [statute of limitations] began to run is a triable issue and beyond the scope of this motion."  The court ruled the petition showed on its face it was barred by the applicable statute of limitations and it contained no allegations of delayed discovery, so it sustained the demurrer with leave to amend.

U.S. Specialty filed a third amended section 850 petition, adding allegations that it was an interested party because Lopez sought to surcharge Hall for failing to adequately defend against a creditor suit, and as the surety it could be liable if Hall were surcharged.  It added allegations that it "did not become aware that [assets transferred to Lopez's sons] had not been returned to the estate until after [it] was informed in 2022 and now believes that neither party accounted nor delivered any assets to . . . Hall."

U.S. Specialty further alleged that "[u]pon discovery of these unaccounted assets and accounts, in 2022, [it] filed its petition as amended herein.  Prior to such time, [it] understood that . . . Hall as the duly appointed administrator of the estate was in the process of marshaling all of the estates assets and accounts including accounting for those described herein.  However, in 2022, [it] became aware that some of the assets and accounts had not been fully accounted for, and thus, at such time, [it] took action to ensure all assets and accounts be properly returned to the [e]state as described herein."

10

Garcia again demurred on statute of limitations grounds and on the basis of quiet title via adverse possession. She characterized the third amended petition as alleging property should be returned to the estate "under various theories of quiet title" but that the gravamen of the petition included fraud (three-year statute of limitations), cancellation of instrument or breach of contract (four-year statute of limitations) and adverse possession (five-year statute of limitations). She argued U.S. Specialty was on constructive notice of her interest in the Murietta property based on the recording of the 2013 grant deed, which triggered U.S. Specialty's duty to investigate. She argued that had it investigated, it would have learned she validly purchased the property in 2013 and it was properly conveyed to her as a bona fide purchaser. She argued that she had been in actual, hostile and continuous possession of the property since 2013, and could not be divested from title. She asked the trial court to take judicial notice of a 2011 trustee's deed upon sale, the 2013 grant deed, and a general power of attorney signed in April 2011 and recorded in May 2012.

Lopez and Saul also demurred, again arguing the applicable limitations periods were those for undue influence and financial elder abuse, both four years. They argued that questions of standing—implicated by U.S. Specialty's argument that a wrong was committed against it when it discovered Hall had failed in her duties—were different from statute of limitations accrual, "i.e., whether [U.S. Specialty] was put on sufficient notice for the statute of limitations to begin to run." They argued U.S. Specialty was stepping into Dunstan's shoes for purposes of the statute of limitations analysis because it was making the claim on the estate's behalf. They pointed to what they asserted were judicially noticeable facts showing U.S. Specialty was on notice as of August 4, 2017, that the estate did not have

11

enough assets to satisfy known creditors, and that Hall had failed to locate, identify and marshal real and personal property belonging to Dunstan into the estate. Lopez and Saul argued U.S. Specialty should have filed its section 850 petition by December 17, 2020, but did not do so until January 26, 2022, barring its action. They argued U.S. Specialty's allegations about its discovery were insufficient to establish its ignorance of unaccounted assets and accounts until 2022, and amendment was futile because it was "clear and undisputable that [U.S. Specialty] was placed on sufficient notice of the facts that give rise to its claim to the real and personal assets subject to the 850 Petition on August 4, 2017." Lopez and Saul asked the court to again judicially notice numerous documents and facts in support of the demurrer.

In opposition, U.S. Specialty argued Garcia waived her right to demurrer on statute of limitations grounds by not raising it in her first demurrer. It maintained there was no quiet title dispute and that judicially noticeable facts showed she had no claim to title. It asserted adverse possession had not been pleaded, and Garcia had not presented evidence establishing the elements of adverse possession. U.S. Specialty argued based on the probate court's November 2016 order that its section 850 petition was a judgment enforcement action carrying a 10-year limitations period.

Following arguments on the matter, the probate court sustained Lopez/Saul's demurrer without leave to amend. It denied Lopez/Saul's requests for judicial notice of the attached exhibits because they did not comply with applicable rules of court, limiting its analysis to the "four corners of the [third amended pleading]." The court ruled the third amended complaint "disclosed on its face that the action is barred by the [statute of limitations]" and U.S. Specialty did not properly plead delayed discovery in

12

that it pleading "merely adds conclusory statements that [U.S. Specialty] did not know that assets were missing until 2022, which is insufficient."

As to Garcia's demurrer, the court sustained it with leave to amend. It reasoned that while the effect of the section 850 petition was to quiet title, the claim was not subject to the quiet title statute of limitations, which is based on the underlying theory of relief. The court ruled the third amended pleading had alleged the Murietta property "was transferred in 2013, but [the pleading] does not plead the applicable [statute of limitations] nor plead around the [statute of limitations]." It ruled Garcia's claim of adverse possession was an affirmative defense which is properly an argument for summary judgment/adjudication, not a demurrer based on the sufficiency of the pleadings.

Rather than amend its petition yet again, U.S. Specialty elected to file this appeal. (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 753 ["When, as here, a demurrer to a complaint is sustained with leave to amend and the plaintiff[ ] elect[s] not to amend the complaint, the plaintiff[ ] may test the validity of the order sustaining the demurrer by appealing from the ensuing judgment of dismissal"].)

DISCUSSION

I. *Demurrer Standards and Appellate Review*

"On appeal after a trial court sustains a general demurrer, we determine de novo the question of whether the complaint alleges facts sufficient to state a cause of action under any legal theory. [Citation.] In so doing, we accept as true all material factual allegations of the complaint, unless contrary to law or facts of which a court may take judicial notice." (*SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 317.) We also accept facts appearing in exhibits attached to the complaint,

13

giving precedence to the facts in those exhibits if they contradict the complaint's allegations. (*Schermer v. Tatum* (2016) 245 Cal.App.4th 912, 923; *Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 967.) U.S. Specialty as the petitioner "bears the burden on appeal to show the trial court erred by sustaining a demurrer. [Citation.] 'A judgment of dismissal after a demurrer has been sustained . . . will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] If we conclude after reviewing a complaint that no liability exists as a matter of law, we must affirm the trial court's order sustaining the demurrer." (*SLPR, L.L.C.*, at p. 317.)

" 'In determining whether [a] complaint states facts sufficient to constitute a cause of action, the trial court may consider all material facts pleaded in the complaint and those arising by reasonable implication therefrom; it may not consider contentions, deductions or conclusions of fact or law.' [Citation.] A statute of limitations defense may be asserted by general demurrer if the complaint shows on its face that the statute bars the action. [Citations.] Nevertheless, ' "[a] demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." ' " (*SLPR, L.L.C. v. San Diego Unified Port Dist.*, *supra*, 49 Cal.App.5th at pp. 316-317; see also *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232.)

II. *U.S. Specialty's Arguments as to the Probate Court's Reasoning*

U.S. Specialty contends the probate court erred by sustaining the demurrer without leave to amend in that it (1) failed to apply the proper standard of review and turned the demurrer into an evidentiary hearing; (2)

14

misapplied the law during oral argument; and (3) incorrectly applied delayed discovery principles. It reiterates in closing that the probate court erred because a demurrer is not the proper mechanism to test fact issues.

U.S. Specialty's framing of these issues in terms of the probate court's reasoning is misplaced. As it acknowledges, this court exercises its independent judgment as to whether the petition states a cause of action or, in the face of undisputed facts, is barred by the statute of limitations. (*Beverage v. Apple, Inc.* (2024) 101 Cal.App.5th 736, 746.) The lower court's reasoning is irrelevant; we review its ruling, not its reasoning. (*Id.*, at pp. 746-747; *Endeavor Operating Co., LLC v. HDI Global Ins. Co.* (2023) 96 Cal.App.5th 420, 442 [disregarding argument that trial court engaged in "shifting reasoning" between two demurrer rulings].) That is why " 'we may affirm on any ground supported by the record regardless of whether the trial court relied upon it.' " (*Beverage*, at p. 747.)

We focus on U.S. Specialty's arguments directed to the relevant questions: whether the third amended section 850 petition is legally sufficient or barred by the statute of limitations.

### III. *Statutes of Limitation and Accural Rules*

"A statute of limitations is the period during which, 'in the judgment of the Legislature,' a plaintiff must ' "institut[e] suit" ' or be barred." (*Piedmont Capital Management, LLC v. McElfish*, *supra*, 94 Cal.App.5th at pp. 967-968, see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).) "A complaint does not state facts sufficient to constitute a cause of action when it shows, on its face, that the cause of action is barred by the applicable statute of limitations." (*Piedmont Capital Management, LLC*, at p. 967.) "Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm,

15

and causation.' [Citations.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' " (*Aryeh*, at p. 1191.)

"To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. These doctrines may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both. The ' "most important" ' of these doctrines, the discovery rule, where applicable, 'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.' " (*Aryeh, supra*, 55 Cal.4th at p. 1192; see also *People v. Experian Data Corp.* (2024) 106 Cal.App.5th 799, 808; *Asaro v. Maniscalco* (2024) 103 Cal.App.5th 717, 732.)

" 'The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of [its] injury and its negligent cause. [Citation.] A plaintiff is held to [its] actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to [it]. [Citation.]' [Citation.] The latter is referred to as inquiry notice. A plaintiff is on inquiry notice 'when the plaintiff suspects or should suspect that [its] injury was caused by wrongdoing, that someone has done something wrong to [it].' [Citation.] 'A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [it] must decide whether to file suit or sit on [its] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [it] cannot wait for the facts to find [it].' " (*People v. Experian Data Corp.*,

16

*supra*, 106 Cal.App.5th at p. 808, quoting *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.)

"[T]he discovery rule most frequently applies when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1248.) "When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in the case of a demurrer, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion. [Citations.] . . . ' "Whether a party has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact,' and whether 'by prosecuting such inquiry, he might have learned such fact' [citation], are themselves questions of fact to be determined by the jury or the trial court." ' " (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 552; *Mandjik v. Eden Township Hospital Dist.* (1992) 4 Cal.App.4th 1488, 1504, fn. 12.)

IV. *Section 850 Limitations Periods*

Section 850 "permits the personal representative or any interested person to file a petition in probate requesting a court order '[w]here the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another.' (§ 850, subd. (a)(2)(C).) Under section 856, 'if the court is satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing the personal representative . . . to execute a conveyance or transfer to the person entitled thereto . . . .' " (*Estate of Yool*

(2007) 151 Cal.App.4th 867, 873-874, fn. omitted; see also *Estate of Young* (2008) 160 Cal.App.4th 62, 75 (*Young*).) An " 'interested person' includes any . . . creditor . . . and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." (§ 48, subd. (a); see *Estate of Myers* (2006) 139 Cal.App.4th 434, 440-441 & fn. 2.)

In *Young*, involving a bench trial on a section 850 petition to recover property from certain "elaborate multi-level" tax avoidance or business trusts (*Young*, *supra*, 160 Cal.App.4th at p. 78), a panel of this court considered whether the petition was barred by the statute of limitations, requiring a determination of which limitations period applied. (*Id*. at pp. 68, 78-79.) We explained that in cases of such petitions, the law permitted the application of statutes of limitations based on the "underlying right asserted." (*Id*. at p. 76, citing *Parker v. Walker* (1992) 5 Cal.App.4th 1173, 1189 [the " 'statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded' "].) " 'Neither the caption, form, nor prayer of the complaint will be deemed conclusive in determining the nature of the liability from which the cause of action flows. On the contrary, the true nature of the action will be ascertained from the basic facts *a posteriori*.' " (*Young*, at p. 77, quoting *Parker*, at p. 1189.)

The section 850 petition in *Young* alleged that one of the decedent's sons, through undue influence, had persuaded his mother to create complex, illegitimate, trusts into which she transferred parcels of her real property. (*Young*, *supra*, 160 Cal.App.4th at p. 73.) Amended petitions included allegations of quiet title, breaches of fiduciary duty, and misappropriation though undue influence, fraud and/or bad faith. (*Ibid*.) Following the bench trial, the probate court found no statute of limitations bar as a result of the

18

estate's delayed discovery of the wrongdoing; it found the son and another individual who helped create the trusts had engaged in undue influence and fraud. (*Id*. at p. 74.)

This court explained that for purposes of analyzing the appropriate limitations period, "we consider not only the purpose of the petition to recover real property, but also the fraud and undue influence allegations. Where the facts adequately allege breach of fiduciary duty or undue influence, the courts will allow a date-of-discovery rule to be applied, ' "when strict adherence to the date of injury rule would result in unfairness to the plaintiff and would encourage wrongdoers to mislead their fiduciary to delay bringing suit. It is particularly appropriate where the defendant maintains custody and control of a plaintiff's property or interests." ' " (*Young*, *supra*, 160 Cal.App.4th at p. 77.)

This court considered arguments that a five-year limitations periods for title disputes provided the applicable limitations period, and held the trial court had properly looked at the "predominant" or "pivotal" allegations of fraud and undue influence to conclude a fraud statute of limitations should apply. (*Young*, *supra*, 160 Cal.App.4th at pp. 78-79.) We held the court "correctly took into account all of the evidence about the underlying circumstances of the transactions, and its selection of the fraud limitations period was a correct resolution of this mixed question of law and fact." (*Young,* at p. 78.)[8] The lower court also concluded the decedent "could not reasonably have been expected to understand precisely what was happening at the time," as "the evidence surrounding these elaborate multi-level trusts

---

[8]    In our view, the question in *Young* was a mixed question because the trial court took evidence in a bench trial. Here, where the pertinent facts are presented by the pleadings and attached exhibits, or matters properly judicially noticed, the question is one of law.

made it difficult, if not impossible, to trace the changes in the beneficial interests . . . ." (*Ibid*.) The record thus "strongly support[ed] [the trial court's] application of limitations rules and policies" of delayed discovery, and the court's selection of a fraud limitations period. (*Ibid*.) "[D]elayed discovery was justifiably asserted and well supported, based on the misrepresentations and concealments" by the decedent's son and the individual who helped create the trusts. (*Id*. at p. 79.)

## V. *The Applicable Statute of Limitations*

The context here differs from *Young* in that we assess the relevant statute of limitations based on U.S. Specialty's pleading. To determine the limitations period or periods applicable to the section 850 petition, we apply settled principles consistent with *Young*, that is, we "identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23; *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 172.) It is the " 'nature of the right sued upon and not the form of action nor the relief demanded [that] determines the applicability of the statute of limitations under our code.' " (*Hensler*, at p. 23.) We examine the petition as a whole to determine the gravamen of the claims. (*PGA West*, at p. 172.) The law permits us to disregard facts inconsistent with other facts or positions U.S. Specialty took in earlier pleadings. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 733; see *Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) The determination of the statute of limitations applicable to a cause of action is a question of law we review independently. (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164; see also *Wang v. Nesse* (2022) 81 Cal.App.5th 428, 438.)

The trial court suggested it was applying the four-year limitations periods for elder abuse and financial elder abuse (Code Civ. Proc., § 343 [four-year limitations for "[a]n action for relief not hereinbefore provided for"]; Welf. & Inst. Code, § 15657.7 [financial elder abuse]; *Asaro v. Maniscalco, supra*, 103 Cal.App.5th at p. 731.) On our independent review, we conclude the complaint is largely based on a claim that Lopez and/or Leon took advantage of the elderly Dunstan and unduly influenced him to enter into the power of attorney, which permitted Lopez and Leon to arrange the Murietta property's sale. The pleading also sounds in an action to void the deed to the Murietta property (Civ. Code, § 3412), which is also "[o]rdinarily" governed by the four-year period of Code of Civil Procedure section 343. (*Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1326.)

But we also consider the purpose of the section 850 petition (*Young, supra*, 160 Cal.App.4th at p. 77.), which is to recover property of the estate. To that end, we recognize the petition attaches as an exhibit the probate court's November 2016 order on Hall's "petition to establish [the] estate's claim of ownership to proper and for [an] order directing its transfer to the estate," which was decided after a hearing on the matter. (*Schermer v. Tatum, supra*, 245 Cal.App.4th at p. 923 [facts in exhibits to the pleading are properly considered on a demurrer and given precedence]; *Piedmont Capital Management, L.L.C. v. McElfish, supra*, 94 Cal.App.5th at p. 967; see also *People v. Franklin* (2016) 63 Cal.4th 261, 280 [" ' "A court may take judicial notice of the [e]xistence of each document in a court file, but can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments" ' "].) In part based on that document, U.S. Specialty asserts that a 10-year limitations period should apply because the essence of the section 850 petition was "a judgment

21

enforcement action" to enforce the probate court's November 2016 order that Lopez and Saul account for and return assets to Hall. It argues the order "on its face uses the word 'adjudged' and seems to fully adjudicate the estate ownership of property and transfer."

Though not well developed, U.S. Specialty's argument has merit. U.S. Specialty refers to Code of Civil Procedure section 337.5 setting out a 10-year limitations period for "[a]n action upon a judgment or decree of any court." Additionally, Code of Civil Procedure section 683.020, which defines the period for enforceability of judgments, provides after the expiration of 10 years after the date of entry of a money judgment or a *judgment for possession . . . of property* the judgment may not be enforced. (Code Civ. Proc., § 683.020.) Here, the probate court's order states in part that it is "adjudged" that particular property (unrelated to the Murietta property) is transferred to Hall, and directs Lopez and Leon "to account to . . . Hall . . . for any . . . assets received by them acting as Trustees of the Dunstan Living Trust and deliver such . . . assets to . . . Hall." Notwithstanding its label as an "order," the court adjudged and in effect decreed that Hall recover all estate assets from Lopez and Leon. (Accord, *Gay v. Straube* (1966) 245 Cal.App.2d 683, 684 [plaintiffs who sued an executrix for legacies awarded them by a decree of distribution were subject to a ten year statute of limitations because their "action [was] based upon the decree"].)

The probate court's order was entered on November 1, 2016. "The statute of limitations for an action on a judgment [or decree] does not accrue until the judgment is final. The judgment is not final until the time within which to appeal the judgment has expired." (*Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 373.) Absent a notice of entry of judgment, the time to appeal would have lapsed in mid-2017. Thus, any action on the decree had to

22

have been filed within ten years of mid-2017, and U.S. Specialty's section 850 petition, originally filed on January 26, 2022, was timely filed.

## VI. *Accrual and Delayed Discovery*

Even if we were to hold that U.S. Specialty's section 850 petition was subject to the four-year limitations period, we would still reverse based upon settled law as to accrual of its asserted claims. Section 850's silence on accrual triggers a presumption that settled common accrual rules apply; we thus "assume the Legislature intended the well-settled body of law that has built up around accrual, including the traditional last element rule and its equitable exceptions, to apply fully . . . ." (*Aryeh, supra*, 55 Cal.4th at p. 1193 [holding UCL, which is silent on accrual, is governed by common law accrual rules].) Thus, the petition "is governed by common law accrual rules to the same extent as any other statute." (*Id.* at p. 1196.) The claim's label " 'is not dispositive; instead, "the nature of the right sued upon" [citation] and the circumstances attending its invocation control the point of accrual. The common law last element accrual rule is the default [citation], while exceptions to that rule apply precisely to the extent the preconditions for their application are met, as would be true under any other statute.' " (*Ibid.*.)

According to Garcia, the May 2013 transfer to her satisfies the elements of "wrongdoing, harm, and causation" needed for a cause of action to accrue. Thus, she argues, "based upon the allegations in the Third Amended Petition, the statute of limitations began to run on May 28, 2013," and U.S. Specialty's 2022 petition is untimely. We cannot agree for several reasons. By that time, Dunstan's estate had not yet been opened, Hall had not been appointed, and U.S. Specialty had not issued any bonds. It is unreasonable to infer that U.S. Specialty would have known it sustained harm before it was even involved in Dunstan's estate. Further, U.S. Specialty alleged it is a

23

surety who bonded Hall. It was not investigating assets, which was Hall's responsibility, but was merely liable for Hall's miscarriage. "In the absence of default, the surety has no obligation." (*Nissho of California, Inc. v. Bond Safeguard Ins. Co.* (2013) 220 Cal.App.4th 974, 983.)

The materials attached to Lopez and Saul's request for judicial notice do not change our conclusion. Garcia says they reflect "circumstances triggering a duty [on U.S. Specialty's part] to investigate," and "include (1) a creditor's claim against the estate in excess of $5,000,000, (2) a judgment entered against the estate, (3) insufficient assets marshalled by the administrator to satisfy the creditor's claim, (4) allegations by Lopez that the administrator was not doing her job properly, including failing to investigate, and (5) that [U.S. Specialty] was facing liability to indemnify the Estate as the bond issuer for the Estate." She says "[a]ll these facts were alleged in the Lopez Action, served on [U.S. Specialty] on August 4, 2017," and put U.S. Specialty on "inquiry notice." First, we may not judicially notice the truth of facts alleged in pleadings. (See footnote 4, *ante*; *Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768.) To reach such a conclusion would require us to draw factual inferences, which we will not do on a demurrer.[9]

Here, U.S. Specialty has expressly alleged that it was unaware that assets transferred to Lopez's sons had not been returned to Dunstan's estate

---

[9] Garcia also asks us to judicially notice a notice of lis pendens filed in the *H.E.* action and recorded against the Murietta property in April 2014. The argument again presumes the *H.E.* action gave rise to U.S. Specialty's duty of inquiry. We consider that a question of fact inappropriate for resolution by demurrer. Given that, and the fact the document was not before the trial court, we deny Garcia's request. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 [absent exceptional circumstances, appellate court will not take judicial notice of matters not before the trial court].)

until 2022. On a demurrer we must accept that allegation as true unless it is contradicted by judicially noticeable facts. But this is not a case where the section 850 petition's allegations, and the properly judicially noticed facts, "can support only one reasonable conclusion." (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C., supra*, 94 Cal.App.5th at p. 552.) We cannot say the only reasonable inference to be drawn from the facts alleged in the operative pleading or properly judicially noticed is that U.S. Specialty should have discovered the existence of the Murietta property such that its section 850 petition is time-barred as a matter of law.

As stated, a demurrer based on limitations will not lie where the proceeding may be, but is not necessarily, time-barred. (*Lee v. Hanley, supra*, 61 Cal.4th at p. 1232.) Because neither U.S. Specialty's section 850 petition nor any document subject to judicial notice conclusively establishes U.S. Specialty did not serve its section 850 petition within the applicable limitations period, the trial court erred by sustaining the demurrer without leave to amend and dismissing the petition.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings.  U.S. Specialty Insurance Company shall recover its costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


RUBIN, J.